**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**

FRANCES BARTON                                                                                          PLAINTIFF

v.                                                                    CIVIL ACTION NO. 3:05-cv-603 HTW-LRA

UNITED STATES OF AMERICA                                                                      DEFENDANT

### MEMORANDUM OPINION AND ORDER

Before the court is the motion of the United States of America for summary judgment [**Docket Nos. 48 & 50**]. The United States argues that it is entitled to summary judgment under Rule 56(b) and (c)[1] of the Federal Rules of Civil Procedure and under the Federal Tort Claims Act, Title 28 U.S.C. §§ 1346(b),[2] and 2671-2680[3]

---

[1] Rule 56(b) of the Federal Rules of Civil Procedure provides that, "[a] party against whom a claim, counterclaim or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof."

Rule 56(c) provides in pertinent part that a, "judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law."

[2] Title 28 U.S.C. § 1346(b) provides that, "... the district courts, together with the United States District Court for the District of the Canal Zone and the District Court of the Virgin Islands, shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

[3] The Federal Tort Claims Act ("FTCA"), Title 28 U.S.C. §§ 2671-2880, represents a limited waiver of the United States' sovereign immunity, which allows individuals to sue the government for tortious conduct of government employees. *Johnson v. United States*, 576 F.2d 606, 612 (5th Cir. 1978), *cert. denied*, 451 U.S. 1018, 101 S.Ct. 3007, 69 L.Ed.2d 389 (1981). The statutory language in these sections is a "uniform federal limitation on the types

on the plaintiff Frances Barton's claims of medical and nursing negligence. Specifically, the United States says that no genuine issue of material fact exists regarding an essential element of plaintiff's tort claim, namely, causation. The undisputed facts, according to the United States, show that plaintiff has adduced no appropriate and timely medical evidence that Charles Barton's development of a decubitus ulcer was due to the lack of proper medical and nursing care at the G. V. (Sonny) Montgomery Veteran's Affairs Medical Center in Jackson, Mississippi (hereinafter "JVAMC").

      The plaintiff's complaint asserts that Charles A. Barton was admitted to JVAMC on February 6, 2003, suffering from a possible drug reaction.  The plaintiff Frances Barton, the spouse of Charles A. Barton and Conservator of his estate, says that Mr. Barton was confined to his bed for most of his stay at JVAMC, and that no measures were taken to prevent skin breakdown, resulting in a stage IV decubitus ulcer.  The plaintiff also claims that Mr. Barton developed a urinary infection from the improper placement of a Foley catheter.  The complaint charges nursing negligence with regard to these matters, and that Mr. Barton suffered physical and emotional pain, as well as out-of-pocket losses and other damages.

---

of acts ... for which the United States has consented to be sued." *Id.*, citing *Laird v. Nelms*, 406 U.S. 797, 799, 92 S.Ct. 1899, 1901, 32 L.Ed.2d 499 (1972). The waiver is neither broad, nor absolute.  Plaintiffs must comply with the procedures established in order to proceed with a suit against the United States, and failure to comply with the procedural regulation mandates the dismissal of the action.  Furthermore, courts may not extend the waiver of sovereign immunity beyond the limits intended by Congress. *U.S. v. Kubrick*, 444 U.S. 111, 117-8, 100 S.Ct. 352, 356-7, 62 L.Ed.2d 259 (1979).  Suits under the FTCA can be brought only under terms and conditions strictly prescribed by Congress. *Honda v. Clark*, 386 U.S. 484, 501, 87 S.Ct. 1188, 1197, 18 L.Ed.2d 244 (1967).

The crux of the summary judgment motion is that the plaintiff has designated no expert who can show a cause for the decubitus ulcer suffered by Charles Barton which would contradict the United States' expert.  The United States notes that on August 7, 2006, plaintiff's counsel designated one Pat Ross, RN, MSN as the plaintiff's only expert witness.  On September 14, 2006, says the United States, plaintiff's counsel submitted the first supplemental report from plaintiff's designated expert witness, Pat Ross, RN, MSN (see exhibits).  On November 17, 2006, Barton submitted a Second Supplemental Expert Designation which also attached a supplemental report from Pat Ross.  The original report, says the United States, stated that the listed alleged deviations therein in the standard of care "were the proximate cause of Mr. Barton's avoidable Pressure Ulcer development and they constituted negligence on the part of the JVAMC staff.   According to the United States, a nurse cannot opine as an expert in this manner; so, the plaintiff cannot show causation and cannot meet her burden of proof.

The United States offers the October 17, 2006, statement of its designated expert Dr. Robert Herndon, a board-certified neurologist who, according to the United States, possesses special knowledge, training, and skill in the treatment of decubitus ulcers.  In his expert report, Dr. Herndon opines that the "decubitus ulcer resulted from a skin shear injury ... and that the standard of care regarding his management for decubitus prevention and subsequent management after the decubitus occurred was met."

Based on the comparative weight of these two opposing experts, the United States has moved for summary judgment on the grounds that there is no genuine

issue of material fact regarding an essential element of the tort claim in this case – causation.  Since any liability of the United States in this case must be determined under Mississippi law, the United States correctly states that in order to recover in a medical and nursing negligence action a plaintiff must prove by expert medical evidence, after having established the doctor-patient relationship, the following: (1) the standard of care/duty; (2) a breach of the standard of care/duty; (3) a causal connection between the breach and the injury/death; and (4) the extent of the plaintiff's damages. Thus, "a plaintiff claiming medical malpractice must show a causal [sic] connection between the injury and the defendant's conduct or acts, and this requires expert medical testimony."  The United States cites Title 28 U.S.C. § 1346(b); *Hollis v. United States*, 323 F.3d 330, 334 (5th Cir. 2003);  *McCaffrey v. Puckett*, 784 So.2d 197, 206 (Miss. 2001).  *Partin v. North Mississippi Medical Center, Inc.*, 929 So.2d 924, 929 (Miss. Ct. App. 2005); and *McMichael v. Howell*, 919 S.2d 18, 24 (Miss. 1990), as authority for the legal principles relied upon for the purposes of this summary judgment motion.

  Expert opinion, says the United States, should only be allowed where the witness is qualified and independent and when the testimony will assist the trier of fact.  Then the United States says that while the plaintiff's expert Ross can testify to the standard of care for nurses, the fact that she is a nurse *may affect the weight of her testimony*.

  The United States cites *Richardson v. Methodist Hospital of Hattiesburg*, 807 So.2d 1244 (Miss. 2002), a wrongful death action, where the patient was admitted to

Wesley Health Center in Hattiesburg, Mississippi, and originally diagnosed with an upper gastrointestinal hemorrhage.  The patient had a history of poor health, which included a stroke, delirium tremens secondary to alcohol abuse, elevated heart rate, fast breathing, and high blood pressure.  During the patient's stay at Wesley, she suffered a second stroke and subsequently died.  The cause of her death was recorded on the death certificate as cerebral vascular accident (stroke) secondary to artherosclerotic vascular disease as a consequence of hypertension.  The patient's physicians concluded the stroke was caused by a totally blocked left carotid artery.

> The plaintiff in *Richardson* brought her lawsuit contending that Wesley had caused or contributed to the patient's pain, suffering, and death by providing negligent and sub-standard nursing care.  The plaintiff's expert was a registered nurse and a certified legal nurse consultant, who was designated to testify to the appropriate nursing standards of care and deviations therefrom committed by the hospital staff. The nurse expert testified that the nursing staff had failed to monitor adequately;  had failed to inform physicians of significant changes in the patient's status; had failed to follow physician's orders; had failed to safeguard adequately; had failed to provide adequate care; had failed to document properly, accurately, and consistently; had failed to assess and reassess adequately; had failed to implement an appropriate plan of care; had failed to evaluate the patient appropriately; had failed to use critical thinking in the nursing process;  and had failed to assess adequately the patient's risk for injury.

> The nurse expert also noted that the patient had exhibited signs of gastrointestinal bleeding (black tarry stools), decreased laboratory values, changes in

mental status and confusion, decreased blood pressure, increased heart and respiratory rates, restlessness, and agitation, all of which either were not reported to the physician or inappropriately documented.  The nurse expert then opined that these deviations from the requisite standard of nursing care had led to the patient's suffering and subsequent death from a stroke.

On appeal of the trial court's summary judgment ruling in favor of Wesley, the Mississippi Supreme Court said that while it does not require a medical doctor to establish the cause of death, the plaintiff is still required to show causation in fact in order to establish the cause of death.  So, it was not enough to show nursing care deviations as the cause of death from a stroke.  In the Court's view, the nurse expert failed to make the "required showing" that the nurses' negligent failure to abide by the standard of care in fact caused or contributed to the patient's death from stroke.  The Court remanded the case on the issue of pain and suffering, noting that the trial court had erred by granting summary judgment on that issue because the nurse could opine on that matter.

The Court, however, upheld summary judgment on the matter of cause of death, stating clearly that, "[w]e agree with the circuit court that Keller (the nurse) lacks the requisite education and experience as an expert to testify concerning the causal link between Wheeless's (the patient's) death and the alleged deviations in nursing care and further that her proffered testimony does not specify such a link. Therefore, the circuit court did not err in granting summary judgment for Wesley on the charge of causing her wrongful death."

Thus, says the United States in the instant case, because the plaintiff here relies on a nurse as her expert, the plaintiff has failed to offer any legally acceptable medical expert evidence that her husband's decubitus ulcer was *caused* by the medical and nursing care and treatment of the JVAMC. The plaintiff's and only expert, Ms. Ross, cannot express an opinion *on causation* that is permissible under Mississippi law. This court does not agree.

The plaintiff responds by distinguishing *Richardson* as a wrongful death case and claims it is inapposite because the instant case is a standard of care and negligence case dealing with the cause of decubitus, a matter well within a nurse's area of expertise, and not with cause of death. The *Richardson* finding that the nurse in that case was "qualified to testify concerning deviations in nursing care and resultant pain and suffering" is a legal finding which does not preclude the nurse in the instant case from saying that nursing failures could cause the decubitus in question.

This court is persuaded to deny the United States' motion for summary judgment [**Docket # 50**], because the motion is moot in view of the following. The motion of the plaintiff to hold the motions for summary judgment in abeyance [**Docket # 67**] is denied, but the court will permit the plaintiff to obtain the expert opinion of a licensed physician and to file supplemental designations [**Docket No. 66**]. Plaintiff shall comply within thirty (30) days of this Order. Defendant shall have thirty (30) days to depose this expert and an additional fifteen (15) days to file any dispositive motion. If defendant wishes to retain an additional expert, defendant should advise the court of same.

Finally, in light of the court's rulings in this matter, the plaintiff's motion for additional time to supplement the plaintiff's response to the motion for summary judgment [**Docket No. 55**] is terminated as moot.

The case is hereby set for pretrial conference on the 29th day of April, 2008, with trial to proceed in accordance with this court's calendar which begins on the 19th day of May, 2008.

**SO ORDERED, this the 27th day of March, 2008.**

s/ **HENRY T. WINGATE**
**CHIEF UNITED STATES DISTRICT JUDGE**

CIVIL ACTION NO.3:05-cv-603 HTW-LRA
Memorandum Opinion and Order